**OFFICE OF PRICE ADMINISTRATION v. GEORGIAN HOTEL CO.**

Civil Action No. 2615.

District Court, D. Massachusetts.

March 29, 1945.

156

Cornelius J. Moynihan, Regional Enforcement Executive of OPA., and William B. Sleigh, Regional Litigation Atty. of OPA., both of Boston, for plaintiff.

Henry M. Leen, of Boston, Mass., for defendant.

HEALEY, District Judge.

This action is brought by the Administrator of the Office of Price Administration pursuant to the provisions of Section 205 (a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 925(e).[1]

The plaintiff seeks to enjoin the defendant from violating section 4(a) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 904(a),[2] by demanding or receiving rents in excess of those established by the applicable Maximum Rent Regulation. The plaintiff also seeks a mandatory injunction requiring the defendant to make restitution to persons from whom the defendant

has received rent in excess of the maximum legal rent.

The defendant has consented to a decree enjoining future violations. The defendant has also admitted the allegations of past violations.

The only question raised by the defendant is the narrow one of whether or not this court has the power to enter a decree ordering restitution.

This narrow question presents considerable difficulty, and there is a dearth of authority on the point.

Section 205(a) of the Emergency Price Control Act of 1942 provides that under certain circumstances which are admittedly present in this case, the Administrator may apply for "an order enforcing compliance * * * and * * * a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

The question to be decided is whether or not this language grants to the court the authority or power to order restitution.

Various judges in unreported decisions have granted relief in the nature of restitution.

Section 205(a) authorizes the Administrator to apply for an "order enforcing compliance." In my opinion, such an order could embrace the rectification of a situation caused by past noncompliance, as well as the prevention of future noncompliance. The language used is broad, and the purposes of the Act are more nearly effectuated by such an interpretation. Furthermore, Section 205(a) provides that the court shall grant "a permanent or temporary injunction, restraining order, or other order." It would seem from this language, that the re-

[1] Section 205(a) provides:
"Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

[2] Section 4(a) provides:
"It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

lief which may be granted is not limited to enjoining future violations. In my opinion, the order for restitution sought is such an "other order."

As pointed out above, the language of the Emergency Price Control Act is very broad. Section 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 217,[3] is much narrower. That section merely gives to the district courts jurisdiction "to restrain violations of section 15" of the Fair Labor Standards Act of 1938. However, the United States Circuit Court of Appeals for the Second Circuit in Walling v. O'Grady, 146 F.2d 422, held that Section 17 of that Act authorized the district courts to order the payment of back pay in a case of discriminatory discharge in violation of Section 15(a) (3), 29 U.S.C.A. § 215(a) (3). In that case the defendants had discharged an employee because he had sued the defendants under Section 16(b) of the Act, 29 U.S.C.A. § 216(b). The Administrator of the Wage and Hour Division of the United States Department of Labor then brought suit to enjoin the defendants from continuing to violate the provisions of Section 15(a) (3) of the Fair Labor Standards Act, and to require them to reinstate the employee and make him whole for loss of wages. The trial court issued a mandatory injunction requiring the defendants to offer the employee reinstatement, but held that it was without authority to order payment of back pay. The Circuit Court of Appeals reversed the judgment of the trial court in part, holding that the court had authority to order the payment of back pay. During the course of its opinion, the Court said:

"The trial judge held that he could not grant back pay because there was nothing in the Act providing for back pay or allowing damages for a discriminatory discharge. But such a discharge was unlawful by Section 15(a) (3) and an injunction to prevent its continuance would have been proper under Section 17 as soon as the discharge took place. It seems unreasonable to sup-

pose that the failure immediately to prevent it left the employee without remedy for loss of wages in the meantime and that the provisions for an injunction and for fines for disobedience of the Act are to be taken as nullifying any other remedy for the wrong. It is probable that the employee could have brought an individual action for loss of wages but such an action would not furnish a remedy adequate for such cases. The amount involved ordinarily would be small and the expense of recovery disproportionate and it seems more in accord with the spirit of sound labor legislation to allow the Administrator to restore all the rights of an employee in a single action instead of requiring one action for an injunction and reinstatement by the Administrator and another by the employee for loss of ad interim wages. We can see little difference between giving reparation to an employee for loss of wages as ancillary to injunctive relief against withholding employment and giving back pay where an injunction for reinstatement has been violated as the court did in Texas & N. O. R. Co. v. Brotherhood of Ry. [& S. S.] Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034. * * * In each case such reparation is necessary to restore the status quo interfered with by the unlawful conduct of the employer and in neither case is there a statutory mandate spelling out all the details of relief necessary for the purpose in hand."

And again:

"There can be no doubt that the right of the Administrator to enforce payment of wages lost by the discharge would promote the purposes of the Act * * *."

It seems to me that, if such relief may be granted under Section 17 of the Fair Labor Standards Act of 1938, a fortiori, the relief sought by the plaintiff in the instant case may be granted.

A decree shall be entered in the form of Exhibit B, annexed to the "Stipulation" filed in this case.

---

[3] Section 17 provides:

"The district courts of the United States and the United States courts of the Territories and possessions shall have jurisdiction, for cause shown, and subject to the provisions of section 20 (relating to notice to opposite party) of the Act entitled 'An Act to supplement existing laws against unlawful restraints and monopolies, and for other purposes' approved October 15, 1914, as amended (U.S.C., 1934 edition, title 28, sec. 381), to restrain violations of section 15."