## BOWLES, Adm'r, v. WARNER HOLDING CO.

### No. 13087.

Circuit Court of Appeals, Eighth Circuit.

Oct. 31, 1945.

R. M. McCareins, Special Litigation Counsel, OPA, of St. Paul, Minn. (George Moncharsh, Deputy Adm'r for Enforcement, OPA, Fleming James, Jr., Director, Litigation Division, OPA, and David London, Chief, Appellate Branch, OPA, all of Washington, D. C., Harry Witherell, Regional Litigation Atty., OPA, of Chicago, Ill., and Harris Nuernberg, Dist. Enforcement Atty., OPA, of St. Paul, Minn., on the brief), for appellant.

R. H. Fryberger, of Minneapolis, Minn. (M. R. Keith and G. W. Townsend, both of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

This is an action brought by the Administrator of the Office of Price Administration, under § 205(a) [1] of the Emergency Price Control Act of 1942, 56 Stat. 23, 33; 50 U.S.C.A.Appendix, § 925(a), to compel

[1] Section 205(a) reads as follows: "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he

compliance with § 4(a)[2] of the Act. The question for decision is whether the District Court erred in refusing to order the defendant (appellee) to tender to tenants, from whom it had collected rentals in excess of the maximum permitted by the applicable regulation, the amounts which they had been overcharged.

The appellee, Warner Holding Company (which will be referred to as "defendant"), owns eight apartment buildings in the city of Minneapolis, containing about 280 dwelling units. Maximum Rent Regulation 53 (7 F.R. 8596), redesignated as "Rent Regulation for Housing" (8 F.R. 7822), prescribed, on and after November 1, 1942, maximum rents for defendant's housing accommodations. Between November 1, 1942, and June 29, 1943, the defendant demanded and collected rents in excess of those permitted by the regulation. For some time prior to June 29, 1943, the defendant had knowledge of the amounts of the overcharges collected and of the tenants from whom the overcharges had been collected. The defendant has failed and refused to tender to such tenants refunds of the overcharges.

The Administrator commenced this action on February 13, 1943. On June 29, 1943, the District Court granted a preliminary injunction against the defendant, restraining it from collecting rents in excess of those permitted by the regulation. Brown v. Warner Holding Co., D.C., 50 F.Supp. 593. After a trial in May, 1944, the court found the issues in favor of the Administrator, and entered a judgment granting him the injunctive relief which he sought, except that the court denied the prayer of the Administrator that the defendant be required "to tender to such persons as are entitled thereto a refund of all amounts collected by defendant from tenants as rent for the use and occupancy of housing accommodations in excess of the maximum rents established by said Regulation, provided, however, that defendant shall not be required to make such tender to any person who has commenced an action against defendant under Section 205(e)[3] of the Emergency Price Control Act of 1942 alleging

---

may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

[2] Section 4(a), 56 Stat. 28, 50 U.S.C.A. Appendix, § 904(a), reads as follows: "It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

[3] Section 205(e), 56 Stat. 34, provided: "If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater, plus reasonable attorney's fees and costs as determined by the court. For the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be. If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer is not entitled to bring suit or action under this subsection, the Administrator may bring such action under this subsection on behalf of the United States. Any suit or action under this subsection may be brought in any court of competent jurisdiction, and shall be instituted within one year after delivery is completed or rent is paid. The provisions of this subsection shall not take effect until after the expiration of six months from the date of enactment of this Act."

Section 205(e) was amended June 30, 1944, § 108(b), 58 Stat. 640, 50 U.S.C.A. Appendix, § 925(e). The section as amended contains the following provision: " * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action,

the collection by defendant of rent in excess of the maximum rents established by said regulation."

The Administrator has appealed from that portion of the judgment which denied his prayer for an order requiring the defendant to tender refunds of overcharges.

The District Court, in effect, construed the Act as providing two specific civil remedies or causes of action, the first, under § 205(a), in favor of the Administrator, for injunctive relief to enforce compliance; and the second, under § 205(e), primarily in favor of persons who had been overcharged, to obtain adequate redress and the expense of procuring it. The court was of the opinion that these remedies were intended to be and were exclusive of other civil remedies to enforce compliance or to redress past violations, and that § 205(a) did not, either expressly or impliedly, authorize the Administrator to apply for, or the court to grant, an order requiring the defendant to tender refunds of rental overcharges collected from its tenants prior to June 29, 1943, the date when the defendant was, by the preliminary injunction, compelled to desist from demanding rentals in excess of the maximum.

The contention of the Administrator is, in substance, that by § 205(a) the District Court was granted complete power to effectuate the policy and purpose of the Act; that a proceeding under § 205(a) is an appeal to the equity jurisdiction of the court and to its discretion (Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754); that language in other statutes authorizing the court "to prevent and restrain violations" has been held to confer full equity powers upon the court to effectuate the purposes of the statute (United States v. United States Steel Corporation, 251 U.S. 417, 452, 40 S.Ct. 293, 299, 64 L.Ed. 343, 8 A.L.R. 1121; United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 64 S.Ct. 805, 88 L.Ed. 1024; Walling v. Miller, 8 Cir.,

138 F.2d 629, 633; Fleming v. Alderman, D.C.Conn., 51 F.Supp. 800; Walling v. O'Grady, 2 Cir., 146 F.2d 422); that plenary jurisdiction to effectuate the policy of a statute includes power to restore the status quo; that this enforcement action is a statutory proceeding in the public interest looking to public ends, to which the right of jury trial does not apply (Agwilines, Inc., v. National Labor Relations Board, 5 Cir., 87 F.2d 146, 151); and that the remedy given by § 205(e) of the Act to those who are overcharged does not affect the power of the court, in an action brought under § 205(a), to order restitution to effectuate the purpose of the Act.

The defendant argues that there is no language in § 205(a) to justify a conclusion that the court was granted the power to order restitution of overcharges; that the plenary power granted to effectuate the purpose of a statute must be predicated upon jurisdiction of the subject matter and of all interested parties; that, since the rights of tenants are here involved, no order of restitution could be entered in the absence of jurisdiction over them; and that equitable relief to restore status can be had only as between those who are parties to the action.

The problem presented is one with respect to which there is a difference of informed opinion. The views of the District Court and of the defendant find support in Bowles, Administrator, v. Skaggs, D.C.W.D.Ky., 59 F.Supp. 4. The case of Office of Price Administration v. Georgian Hotel Co., D.C. Mass., 60 F.Supp. 155, sustains the position of the Administrator. The Administrator is of the opinion that the concurring opinion in Walling v. Miller, 8 Cir., 138 F.2d 629, 633, and the cases of Fleming v. Alderman, D.C.Conn., 51 F.Supp. 800, and Walling v. O'Grady, 2 Cir., 146 F.2d 422, all of which dealt with the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., clearly indicate that the District Court had the

the Administrator may institute such action on behalf of the United States within such one-year period. If such action is instituted by the Administrator, the buyer shall thereafter be barred from bringing an action for the same violation or violations. Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. A judgment in an action for damages under this

subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered."

The violations here in suit were all committed prior to June 30, 1944, the effective date of the amendment.

power to order restitution of overcharges in connection with granting injunctive relief.

That the reparation order which the Administrator sought would have been in the public interest, would have been appropriate, and would have required the defendant to do no more than it should voluntarily have offered to do to bring itself into compliance with the Act from the time the rent regulation became effective, is, we think, beside the point. The question is whether Congress in § 205(a) of the Act authorized the Administrator to apply for, and empowered the court to grant, reparation orders as a means of enforcing compliance with the Act.

■ The Administrator is seeking to enforce a right created by the Act. Concededly, he is proceeding in his own behalf under § 205(a). That section, which is sufficiently specific, governs the procedure in enforcement actions brought by the Administrator in both state and federal courts, and it is fair to assume that the language of the section expressed with substantial accuracy the intent of Congress as to the nature of the remedy which the Administrator was authorized to seek from the courts in order to enforce compliance with the Act. See Hecht Co. v. Bowles, 321 U.S. 321, 330, 64 S.Ct. 587, 88 L.Ed. 754. At the time this legislation was enacted, Congress apparently believed that the remedy afforded the Administrator by § 205(a) to enforce compliance by procuring injunctive orders or their equivalents (see Hecht Co. v. Bowles, supra, page 328 of 321 U.S., page 591 of 64 S.Ct., 88 L.Ed. 754), and the remedy furnished by § 205(e) to those who were overcharged and were entitled to sue (and to the Administrator if they were not entitled to sue) to recover damages and expenses, would constitute adequate civil remedies to effectuate the purposes of the Act. Evidently it was found that § 205(e) as originally enacted was ineffective, and it was therefore amended so that the Administrator might enforce the remedy provided by that section if the persons who were entitled to it failed to act promptly. The fact that Congress amended § 205(e) so as to enlarge the right of the Administrator to secure the reparations therein provided for, militates against his contention here that under § 205(a) he always had the right to seek, and the court the power to grant, reparation orders to effectuate the purpose of the Act.

■ It is well settled "That where a statute creates a right and provides a special remedy, that remedy is exclusive. Wilder Manufacturing Co. v. Corn Products Refining Co., 236 U.S. 165, 174, 175, 35 S.Ct. 398, 59 L.Ed. 520; Arnson v. Murphy, 109 U.S. 238, 3 S.Ct. 184, 27 L.Ed. 920, Ann. Cas.1916A, 118; Barnet v. National Bank, 98 U.S. 555, 558, 25 L.Ed. 212; Farmers' & Mechanics' National Bank v. Dearing, 91 U.S. 29, 35, 23 L.Ed. 196." United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 465, 63 L.Ed. 1011. See, also, Hassel v. United States, 3 Cir., 34 F.2d 34, 36 and cases cited. The rule is stated in 50 Am. Jur., Statutes, § 596, pages 593, 594, as follows: "It is an established principle, that if a statute creating a new right or cause of action where none existed before, also provides an adequate remedy for the enforcement of the right created, and the statutory remedy is not by its terms cumulative, the remedy thus prescribed is exclusive. In such case, such remedy must be pursued in the enforcement of the right to the exclusion of any other remedy."

■ It is our opinion that this established rule of law governs this case and that § 205(a) provides a specific and exclusive statutory remedy for enforcing compliance with the Act. We also think that § 205(a) discloses no intent on the part of Congress to make reparation orders available to the Administrator. This Court cannot enlarge the statutory scheme of enforcement. See Globe Newspaper Co. v. Walker, 210 U.S. 356, 364, 28 S.Ct. 726, 52 L.Ed. 1096.

We do not regard the views which we have expressed as inconsistent with Walling v. O'Grady, supra, 146 F.2d 422, or the other cases dealing with the Fair Labor Standards Act, upon which the Administrator relies. It is true that those cases hold that, under that Act, in actions brought by the Administrator of the Wage and Hour Division to restrain violations, reparation orders may be granted in connection with injunctive relief. However, § 17 of the Fair Labor Standards Act, 52 Stat. 1069, 29 U.S.C.A. § 217, authorizes the federal District Courts, broadly, "to restrain violations." The statutory remedy may thus be regarded as general and cumulative, rather than special and exclusive. It is to be noted that in Walling v. O'Grady, supra, page 423 of 146 F.2d, the court was careful to distinguish the case from that of Decorative Stone Co. v. Building Trades Council,

2 Cir., 23 F.2d 426, in which it was held that the statutory remedies prescribed by the Clayton Act 38 Stat. 730, were exclusive.

The judgment appealed from is affirmed.